PARAMOUNT HOSIERY FORM DRYING CO. v. MOORHEAD KNITTING CO.

(Circuit Court of Appeals, Third Circuit.   October 13, 1919.)

No. 2433.

PATENTS ⬤⟿328—PROCESS OF DRYING AND SHAPING HOSIERY ARTICLES INVALID.
    The Collis patent, No. 1,204,945, for a process for finishing and shaping hosiery articles, *held* invalid, as covering nothing more than the function of an apparatus, not patentable in view of the prior art.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit in equity by the Paramount Hosiery Form Drying Company against the Moorhead Knitting Company. Decree for defendant (251 Fed. 897), and complainant appeals. Affirmed.

Robert F. Rogers, of New York City, Charles H. Howson, of Philadelphia, Pa., and Edmund H. Parry, of Washington, D. C., for appellant.

Henry N. Paul, Jr., and Joseph C. Fraley, both of Philadelphia, Pa., for appellee.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. In the court below the appellant sued the appellee for an alleged infringement of two patents, numbered 1,114,966 and 1,204,945, granted to it as assignee of one George Collis, on October 27, 1914, and November 14, 1916, respectively. The last patent was issued on a division of the application for the first. The earlier patent will hereafter, for convenience, be referred to as "the apparatus patent," and the later one as "the process patent." Generally speaking, one covers an apparatus for simultaneously drying and finishing hosiery articles, in the sense of stretching, shaping, smoothing, and creasing, and the other a method for accomplishing the same purpose.

In the court below, the claims in suit of both patents were held to be invalid, and a decree dismissing the bill was entered. The appellant has acquiesced in the decree so far as its effect was to invalidate the apparatus patent, and appeals from only that part which dismissed the bill as to the process patent. Infringement is not seriously denied. Some question as to an estoppel was presented in the court below, and decided adversely to the appellant, as was likewise decided adversely to the appellee a counterclaim interposed by it. The appellant has abandoned its claim that the appellee is estopped to deny the validity of the process patent, and the appellee has not appealed from the decree dismissing its counterclaim. The only question, therefore, to be considered on this appeal, is the validity of the process patent.

The original application for the apparatus patent was filed on June 27, 1911. After a rather stormy career in the Patent Office, a patent containing 45 claims was issued on October 27, 1914. Three days before its issue a division of the original application was filed, which eventuated on November 14, 1916, in the process patent, containing 5 claims, the last 3 of which are in the suit. The learned judge of the court below accepted the month of September, 1910, as the date of the Collis invention. We shall do likewise. Passing for the moment the exact state of the art at the time Collis made his alleged invention, we will refer briefly to what Collis assumed that he had invented.

It had been for many years the custom to remove as much as possible of the moisture, with which dyed or bleached hosiery and other similar textile articles become saturated in the dyeing or bleaching process, by means of a centrifugal machine known as a "whizzer," and to finish the drying by drawing the articles over wooden forms or boards and then depositing them in dry boxes. The latter were compartments supplied with interior heating coils and fans to insure circulation of the air. After the articles had been thus thoroughly dried, they were removed from the boards, and finally shaped, smoothed, and given the crease necessary to make them marketable, by placing them in a press and there subjecting them to pressure for various periods of time, depending upon the character of press used. The apparatus described in the Collis patents was designed to, and in practice actually did, accomplish the ultimate drying and finishing in one operation.

Without referring to the supplemental housing or casing described in the patents (which is of no materiality in this case), the Collis apparatus consists of hollow metal forms, similar in shape to the wooden forms before mentioned, and internally heated by steam or other means. Over these the wet hosiery article is drawn. The forms are narrow relatively to their width, and have their opposite narrow edges substantially sharp. The forms being heated internally, the hosiery mounted on them is dried, and the sharp edges produce the before-mentioned finish. The utility of the apparatus of the first patent, and the advance which its use in the art of finishing hosiery made, was fully recognized by the court below, and is not, as indeed it could not very well be, disputed. The court below found, however (and, as before stated, the appellant accepts such finding), that Collis was not the first to conceive and practically develop the apparatus covered by his patent, and therefore the apparatus patent was held to be invalid. Indeed, as appears from the opinion of the learned judge of the court below, appellant abandoned during the trial any claim to the validity of that patent.

The patented prior art, as Collis admitted during the prosecution of his application for the apparatus patent, exhibits several examples of hollow metal forms designed to dry hosiery and textile articles by the application of internal heat. The evidence also abundantly demonstrates that, long prior to the earliest date claimed for the Collis invention, internally heated metal forms with sharp edges, to produce the necessary creases, had been designed and used, although not patented, by several concerns for the finishing of silk gloves and silk hosiery. The proof of the prior uses of an apparatus similar to, if not identical in all respects with, that covered by the patent, in a suit instituted by the present appellant against one Walter Snyder and the Walter Snyder Company, was so overwhelming as to cause the appellant to voluntarily abandon that suit, although the forms manufactured and sold by the alleged infringers unquestionably infringed the Collis apparatus patent.

The process patent, in the language of the specification, describes the method sought to be covered by it as follows:

"A method of treating hosiery articles, consisting in heating, from within, and to a predetermined fabric-drying temperature, a metallic form having its sides relatively narrow in cross-section and converging into substantially reduced, crease-producing edges; then superposing upon said form a hosiery article and subjecting the same to the action of heat imparted internally thereto by the form for producing a substantially flattened and creased article."

Notwithstanding the invalidity of the apparatus patent because of anticipation, it is sought to avoid a like result as to the process patent on the theory that, although it was old in the finishing of silk gloves and silk hosiery to smooth and crease them on internally heated metallic forms with sharp edges, and although the prior art exhibited internally heated metal forms for the drying of hosiery, the method or process of simultaneously drying (in the sense of extracting the excess moisture acquired during the dyeing or bleaching process and not re-

moved by the "whizzer" and ordinary evaporation) and finishing (in the sense of stretching, smoothing, and creasing) hosiery through the use of internally heated metallic forms, with crease-producing edges, had not been conceived by any one before Collis.

It will be noted that the court below based its judgment that the process patent was invalid, both upon the ground that it covered nothing more than the function of the patented apparatus, and that the before-mentioned prior use of the forms covered by the apparatus patent anticipated the method or process of the process patent. If it be true, as appellant contends, that these sharp-edge, crease-producing forms of the prior art were not designed or used for drying hosiery in the sense before mentioned, although capable of performing that function, but only for finishing and creasing silk gloves and hosiery from which all moisture had been extracted, and which it was necessary to again dampen before the finishing, and that the process patent was not, therefore, anticipated by their prior use (Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 424, 22 Sup. Ct. 698, 46 L. Ed. 968), it is apparent that the invention of that patent, if any there is, resides simply in taking that part of the prior art which exhibits apparatus for drying wet hosiery and coupling it with that part of the prior art which used the same forms, different only in that their edges were sharp, to produce the necessary crease or finish on articles which had already been dried.

We shall not pause to consider whether this constituted patentable invention; or whether the use of the prior art crease-producing forms to finish textile articles which had already been dried, but which proper practice required should again be moistened, in order that they could be properly finished, was the practicing of the process or method of the Collis process patent, or whether the process patent can relate back to the date of the filing of the original application for the apparatus patent, and thus avoid anticipation due to the use of Ermentrout's forms, because we think that the decree of the court below must be affirmed on the other ground, namely, that the process patent covers merely the function of the apparatus described and covered by the apparatus patent. In this connection, it may be well to briefly review some of the circumstances surrounding the acquisition of the Collis application by the appellant, and some of the events that transpired thereafter.

It appears that one Ermertrout, of Reading, Pa., having seen a circular put out by a concern known as the Curtin-Hebert-Anthony Company, which had before the earliest date claimed for the Collis invention manufactured and sold internally heated, sharp-edged, crease-producing metal forms, to certain concerns engaged in manufacturing silk gloves and silk hosiery, began in the autumn of 1911 the manufacture of internally heated hosiery forms, substantially identical with those shown in the two Collis patents. They were designed to be used for the same purpose as the forms of the patent. Some of them found their way into the factory of the Paramount Hosiery Company, and worked so well that the officers of that concern determined to purchase

Ermentrout's business and a limited patent, relating to a specific type of coupling between the form and a steam supply pipe, which he had secured. A company was subsequently formed for the purpose of carrying on the business which had been begun by Ermentrout. In the course of selling some of such forms, the original Collis application, which was then pending in the Patent Office, was discovered. The appellant thereupon, on December 24, 1913, in order to protect itself, purchased the same for a comparatively small sum, and thereafter prosecuted the original application and the subsequent division thereof. It was not until the following June, although the application had then been pending for three years, that the division was suggested. In the meanwhile, the prior art, so far as it was accessible to the Patent Office, had been quite thoroughly reviewed, and the slight field of invention left open to Collis made manifest. In the early or middle part of 1914, Walter Snyder, who was engaged in manufacturing laundry machinery in Philadelphia, began the manufacture of drying forms for laundry purposes, and subsequently extended his business to the manufacturing of these forms for hosiery manufacturers.

In 1916, the present appellant began suit against Snyder and the Walter Snyder Company, alleging that the forms which were thus being manufactured by them infringed the apparatus patent in suit in this case. That suit was voluntarily discontinued under the circumstances before mentioned. Most of the forms manufactured by the appellant are distributed to those who use them, under license agreements which provide for the payment of certain royalties, based on the amount of hosiery articles dried on the forms. The appellee had acquired, under such an agreement, a number of the appellant's forms. Subsequently it acquired some of the forms manufactured by the Walter Snyder Company, and used both in its business. After the appellant abandoned its suit against the Snyder Company, it began this suit, basing the alleged infringement upon the appellee's use of the forms which it had purchased from the Snyder Company. It is thus apparent that the appellant is attempting in this suit by means of the process patent to secure a monopoly in the use of an apparatus which admittedly could not be the subject-matter of a valid patent at the earliest date at which it is claimed that Collis invented it, because the only way shown in the patent, or otherwise, for practicing the method covered by the process patent, is the use of the particular apparatus described and covered by the apparatus patent. The process is, in reality, nothing but the use of the apparatus. That is manifest by reference to the before-quoted portion of the specification of the process patent, as well as the following extract therefrom, viz.:

"From the foregoing, it will be seen that the procedure followed, in treating hosiery articles under my improved method, is first to effect a heating (from within and to a predetermined drying temperature) of a hollow form, preferably constructed of metal, and having its sides narrow in cross-section and converging into substantially reduced-edge portions; then manually stretching a hosiery article longitudinally thereon and retaining the same on the form for the fabric-drying period, during which the fabric of the article is simultaneously dried, shaped, and creased at two oppositely disposed portions, and then removing or stripping the article from the form."

Moreover, the apparatus patent specifies, and in fact claims, the function of the apparatus as the simultaneous drying, creasing, and finishing of the textile article mounted on the exterior thereof. It is impossible for us to perceive how this process can be considered in any other light than the mere function of the apparatus. The inevitable result of any other conclusion would be to give validity to a patented process which consists solely in the use of an apparatus which cannot be the subject-matter of a valid patent.

It would serve no useful purpose, and would unduly burden this opinion, to review the authorities which have differentiated between the mere function of a machine or apparatus and a patentable process, which could be practiced by the use of the apparatus or machine, and to attempt to distinguish those cases from this. It is sufficient, we think, to refer to Busch v. Jones, 184 U. S. 598, and particularly to the remarks of Mr. Justice McKenna on page 607, 22 Sup. Ct. 511, 46 L. Ed. 707. In the case at bar, the dependence is the process upon the apparatus, and not the apparatus upon the process, just as the process in that case was dependent upon the press. It is equally true that the process in this case is as clearly the whole value, the sole purpose of the apparatus, as in that case "the process was the whole value, the sole purpose of the press." We are accordingly of the opinion that the claims in suit of the process patent cover nothing but the mere function of a machine or apparatus, and hence are invalid.

The decree appealed from is therefore affirmed, with costs.